# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

ANGELA SHIRLAW,

                      Plaintiff,

              v.

NEW YORK STATE UNIFIED COURT SYSTEM
OFFICE OF COURT ADMINISTRATION and
DENNIS W. QUIRK,

                      Defendants.

**Case No. 17-cv-04489 (PAE)**

## MEMORANDUM OF LAW
## IN SUPPORT OF
## MOTION TO DISMISS COMPLAINT

BARON ASSOCIATES P.C.
*Attorneys for Defendant Dennis W. Quirk*
Bruce Baron, Esq. (BB-7297)
2509 Avenue U
Brooklyn, New York 11229
(718) 954-6501

August 2, 2017
Brooklyn, New York

## TABLE OF CONTENTS

I.  Background .......................................................................1

    A.  The Facts ....................................................................1

    B.  Procedural History ..............................................................4

II.  Applicable Legal Standards ....................................................5

    A.  Standards for Dismissal ......................................................5

    B.  Standard for a Preliminary Injunction.....................................6

    C.  Applicable Principles of the NYCHRL ...............................6

III.  Argument .......................................................................8

    A.  Overview of the Claims against Quirk...................................8

    B.  The Plaintiff's Cases ..........................................................10

    C.  Pursuant to Rule 12(b)(7), the Complaint should be
           dismissed because the Union has not been joined. ................11

         1.  Injunctive relief would affect the Union....................11

         2.  The other requested relief would affect the
             Collective Bargaining Agreement.............................12

    D.  Dismissal of the Discrimination Claim against Quirk...........13

         1.  Discrimination by the Employer ...............................13

             a.  Quirk does not control the Employer.............13

             b.  In any event, the OCA
                 did not discriminate.......................................14

          2.  Discrimination Directly by Quirk .............................14

    E.  Dismissal of the Retaliation Claim against Quirk.................18

         1.  May 2016 Call to Dalton.............................................18

2.  February 2017 Sharing of Judge Fisher's Letter........19

3.  April 2017 Handling of the Rash-on-the-Balls
    Text Message ...............................................................22

4.  Not "reasonably likely to deter a person from
    engaging in protected activity" ...................................22

5.  Temporal Proximity is Lacking ...................................25

F.  Supplemental Jurisdiction........................................................27

G.  Dismissal With Prejudice.........................................................28

H.  The Plaintiff's Motion for a Preliminary Injunction..............28

CONCLUSION            ...........................................................................29

# TABLE OF AUTHORITIES

Cases

*Able v United States,* 44 F3d 128 (2d Cir 1995) ............................................. 10 n 14

*Acosta v City of NY,* 2012 US Dist LEXIS 60460
    (SDNY Apr. 26, 2012) ........................................................................ 5 n 9

*Adorno v Corr. Servs. Corp.,* 312 F Supp 2d 505 (SDNY 2004) .................. 11

*Albunio v City of NY,* 16 NY3d 472 (2011) .................................................... 25 n 37

*Alderson v Ferrellgas, Inc.,* 127 F Supp 3d 937 (ND Ind 2015) ................... 23 n 36

*Almonte v NY City Hous. Auth.,* 1990 US Dist LEXIS 9341
    (SDNY July 27, 1990) ...................................................................... 11

*Alvarez v City of NY,* 31 F Supp 2d 334 (SDNY 1998) ................................. 25 n 37

*Anderson v City of NY,* 2012 US Dist LEXIS 182520
    (EDNY Dec. 27, 2012) ..................................................................... 7 n 11

*Arar v Ashcroft,* 585 F3d 559 (2d Cir 2009) .................................................. 5 n 8

*Arcamuzi v Continental Air Lines, Inc.,* 819 F2d 935 (9th Cir 1987) ............ 25 n 37

*Ardigo v J. Christopher Capital, LLC,* 2013 US Dist LEXIS 41740
    (SDNY Mar. 25, 2013) .................................................................... 5 n 9

*Ashcroft v Iqbal,* 556 US 662 (2009) ............................................................ 5

*AT&T v NLRB,* 521 F2d 1159 (2d Cir 1975) .................................................. 18

*Back v Hastings on Hudson Union Free Sch. Dist.,*
    365 F3d 107 (2d Cir 2004) .............................................................. 17 n 25

*Baldwin v Bank of Am., N.A.,* 42 Misc 3d 1203(A),
    2013 NY Slip Op 52194(U) (Sup Ct, Kings County 2013) ............... 17 n 25

*Ballard v Children's Aid Socy.,* 781 F Supp 2d 198 (SDNY 2011) .............. 6

*Barberan v Nationpoint,* 706 F Supp 2d 408 (SDNY 2010) .......................... 21

*Beachum v AWISCO NY & Local 810,* 785 F Supp 2d 84
 (SDNY 2011), *aff'd,* 459 F App'x 58 (2d Cir 2012) .........................26

*Bell Atl. Corp. v Twombly,* 550 US 544 (2007).............................................5

*Belt v EmCare Inc.,* 299 F Supp 2d 664 (ED Tex 2003) ...............................25 n 37

*Bennett v Health Mgt. Sys., Inc.,* 92 AD3d 29 (1st Dept 2011).....................10 n 13

*Benussi v UBS Fin. Servs.,* 2014 US Dist LEXIS 18642
 (SDNY Feb. 13, 2014) ......................................................................11 n 16

*Bermudez v City of NY,* 783 F Supp 2d 560 (SDNY 2011) ...........................23 n 36

*Blackledge v Alabama Dep't of Mental Health & Mental Retardation,*
 2007 US Dist LEXIS 79476 (MD Ala Oct. 25, 2007)........................23 n 36

*Booth v Pasco County,* 829 F Supp 2d 1180 (MD Fla 2011) ........................25 n 37, 26 n 39

*Bright v Coca Cola Refreshments USA, Inc.,*
 2014 US Dist LEXIS 155565 (EDNY Nov. 3, 2014)........................8

*Burlington N. & Santa Fe Ry. v White,* 548 US 53 (2006)...........................25 n 37

*Campbell v Cellco Partnership,* 860 F Supp 2d 284 (SDNY 2012)..............7 n 11

*Carnegie-Mellon Univ. v Cohill,* 484 US 343 (1988)....................................27

*Casalino v NY State Catholic Health Plan, Inc.,*
 2012 US Dist LEXIS 46233 (SDNY 2012).........................................9 n 12

*Centeno-Bernuy v Perry,* 302 F Supp 2d 128 (WDNY 2003).......................25 n 37

*Christian Louboutin S.A. v Yves St. Laurent Am. Holding, Inc.,*
 696 F3d 206 (2d Cir 2012)................................................................28

*Cid v ASA Inst. of Bus. & Computer Tech., Inc.,*
 2013 US Dist LEXIS 41001 (EDNY Mar. 22, 2013).........................25 n 37

*Clark County Sch. Dist. v Breeden,* 532 US 268 (2001)................................25

*Coker v Marmon Group, Inc.,* 455 F Supp 398 (DSC 1978).........................12

*Copeland v Fortis,* 685 F Supp 2d 498 (SDNY 2010) ..................................28

iv

*Crab House of Douglaston v Newsday Inc.*,
    801 F Supp 2d 64 (EDNY 2011) ..........................................................13

*Craig v Lew*, 109 F Supp 3d 268 (DDC 2015) ...............................................23 n 36

*Cunningham v NY State Dept. of Labor*, 2010 US Dist LEXIS 42943
    (NDNY Apr. 30, 2010), *aff'd*, 429 F App'x 17 (2d Cir 2011) ..........23 n 36

*Davis v Rynkewicz*, 2015 US Dist LEXIS 29171
    (WDNY Mar. 10, 2015).....................................................................10 n 13

*Davis-Bell v Columbia Univ.*, 851 F Supp 2d 650 (SDNY 2012) .................7

*Dechberry v NY City Fire Dept.*, 124 F Supp 3d 131 (EDNY 2015) .............5 n 9

*DePaula v State of NY*, 24 Misc 3d 1222(A),
2009 NY Slip Op 51558(U) (Ct Cl 2009),
*aff'd*, 82 AD3d 827 (2nd Dept 2011)...............................................................17

*Deshpande v Medisys Health Network, Inc.*,
    2010 US Dist LEXIS 37891 (EDNY Apr. 16, 2010),
    *aff'd*, 423 F App'x 31 (2d Cir 2011)....................................................27 n 40

*Dillon v Ned Mgt.*, 85 F Supp 3d 639 (EDNY 2015) .....................................10 n 15

*Duch v Kohn*, 2013 US Dist LEXIS 51242 (SDNY Mar. 28, 2013).............19 n 28

*Edwards v Tacoma Pub. Schs.*,
    2006 US Dist LEXIS 76631 (WD Wash Oct. 20, 2006),
    *aff'd*, 275 F App'x 629 (9th Cir 2008)...............................................23 n 36

*EEOC v Day & Zimmerman NPS, Inc.*,
    2016 US Dist LEXIS 48800 (D Conn Apr. 12, 2016).......................25 n 37

*EEOC v MacMillan Bloedel Containers, Inc.*,
    503 F2d 1086 (6th Cir 1974) .............................................................12

*EEOC v Omni Hotels Mgt. Corp.*, 516 F Supp 2d 678 (ND Tex 2007) ........23 n 36

*Espinal v Goord*, 558 F3d 119 (2d Cir 2009) .................................................25 n 37

*Esposito v Deutsche Bank AG*,
    2008 US Dist LEXIS 101460 (SDNY Dec. 15, 2008) ......................17 n 25

*Fattoruso v Hilton Grand Vacations Co., LLC,*
　　873 F Supp 2d 569 (SDNY 2012),
　　*aff'd,* 525 F App'x 26 (2d Cir 2013)....................................................5 n 9

*Feingold v New York,* 366 F3d 138 (2d Cir 2004).........................................11 n 16

*Fisher v Vassar Coll.,* 70 F3d 1420 (2d Cir 1995) ........................................9

*Fleming v MaxMara United States, Inc.,*
　　644 F Supp 2d 247 (EDNY 2009),
　　*aff'd,* 371 F App'x 115 (2d Cir 2010).................................................7 n 11

*Fleming v MaxMara United States, Inc.,*
　　644 F Supp 2d 247 (EDNY 2009),
　　*aff'd,* 371 F App'x 115 (2d Cir 2010).................................................27 n 40

*Fort Worth Employers' Retirement Fund v Biovail Corp.,*
　　615 F Supp 2d 218 (SDNY 2009) .......................................................28

*Foster v Morgenthau,* 633 F Supp 718 (SDNY 1986)....................................28

*Fox Indus. v Gurovich,* 323 F Supp 2d 376 (EDNY 2004) ............................17 n 26

*Friends of the E. Hampton Airport, Inc. v Town of E. Hampton,*
　　841 F3d 133 (2d Cir 2016),
　　*cert. den.,* 2017 U.S. LEXIS 4165, ___ US ___ (2017) ......................6

*Gambale v Deutsche Bank AG,*
　　2003 US Dist LEXIS 11180 (SDNY July 2, 2003) ...........................17 n 25

*Goins v County of Merced,* 185 F Supp 3d 1224 ED Cal 2016 .....................23 n 36

*Gordon v City of NY,*
　　2015 US Dist LEXIS 70915 (SDNY June 2, 2015)...........................25 n 37

*Gordon v NY City Bd. of Educ.,* 232 F3d 111 (2d Cir 2000) .........................25 n 38

*Green v Continuum Health Partners, Inc.,*
　　2010 NY Slip Op 33877(U) (Sup Ct, NY County 2010),
　　*aff'd,* 88 AD3d 487 (1st Dept 2011) ..................................................7 n 11

*Greene v Alabama Dep't of Pub. Health,*
　　2017 US Dist LEXIS 16357 (MD Ala Feb. 3, 2017),
　　*adopted,* 2017 US Dist LEXIS 25275 (MD Ala Feb. 23, 2017)........23 n 36

*Grimes v Fremont Gen. Corp.,* 933 F Supp 2d 584 (SDNY 2013) ...............28

*Grimes-Jenkins v Consol. Edison Co. of NY,*
    2017 US Dist LEXIS 77710 (SDNY May 22, 2017)............................8

*Grogg v Gen. Motors Corp.,* 72 FRD 523 (SDNY 1976)...............................13

*Gunnell v Utah Val. State Coll.,* 152 F3d 1253 (10th Cir 1998) ...................10 n 13

*Haffer v Temple Univ. of Commonwealth Sys. of Higher Educ.,*
    115 FRD 506 (ED Pa 1987)..................................................................25 n 37

*Hahn v Bank of Am. Inc.,*
    2014 US Dist LEXIS 45886 (SDNY Mar. 31, 2014),
    *aff'd,* 607 F App'x 55 (2d Cir 2015)....................................................23 n 36

*Harisch v Goldberg,*
    2016 US Dist LEXIS 39494 (SDNY Mar. 25, 2016) .........................12

*Hawkins v Allis-Chalmers Corp.,* 527 F Supp 895 (WD Mo 1981)..............12

*High Falls Brewing Co. , LLC v Boston Beer Corp.,*
    852 F Supp 2d 306 (WDNY 2012).......................................................22

*Holmes v Air Line Pilots Assn.,* 745 F Supp 2d 176 (EDNY 2010) ..............5 n 8

*Holt v Cont. Group,* 708 F2d 87 (2d Cir 1983) .............................................10 n 13

*Holt v KMI-Cont.,* 95 F3d 123 (2d Cir 1996) .................................................10 n 13

*Hussain v Long Is. R.R.,* 2002 US Dist LEXIS 17807
    (SDNY Sep. 20, 2002).......................................................................11 n 16

*Jackson v NYS Dept. of Labor,* 2012 US Dist LEXIS 34366
    (SDNY Mar. 12, 2012) ......................................................................10 n 13

*Johnson v Andy Frain Servs.,*
    2015 US Dist LEXIS 29932 (EDNY Mar. 10, 2015),
    *aff'd,* 638 F App'x 68 (2d Cir 2016)....................................................28

*Johnson v Edwards,*
    2012 US Dist LEXIS 14289 (SD Miss Feb. 7, 2012),
    *aff'd,* 509 F App'x 362 (5th Cir 2013)...............................................23 n 36

*Johnson v J. Walter Thompson U.S.A., LLC,*
    224 F Supp 3d 296 (SDNY 2016) .......................................................10 n 15, 25 n 37

*Johnson v Watkins*, 803 F Supp 2d 561 (SD Miss 2011),
    *aff'd*, 472 F App'x 330 (5th Cir 2012)................................................23 n 36

*Jones v Kent Sales & Serv. Corp.*,
    2012 US Dist LEXIS 132112 (ND Ala Sep. 17, 2012) ....................23 n 36

*Kaur v NY City Health & Hosps. Corp.*,
    688 F Supp 2d 317 (SDNY 2010) ....................................................16 n 24, 27 n 40

*Kellman v Metro. Transp. Auth.*, 8 F Supp 3d 351 (SDNY 2014).................25 n 37

*Kennedy v Fed. Express Corp.*, 2016 US Dist LEXIS 133146
    (NDNY Sep. 28, 2016) ....................................................................7

*Kessler v Westchester County Dept. of Social Servs.*,
    461 F3d 199 (2d Cir 2006)...............................................................25 n 37

*Knox v Indiana*, 93 F3d 1327 (7th Cir 1996)................................................10 n 15

*Krebaum v Capital One, N.A.*, 138 AD3d 528 (1st Dept 2016) ....................26 n 39

*Kwan v Andalex Group, LLC*, 737 F3d 834 (2d Cir 2013)............................26 n 39

*Kwon v Yun*, 606 F Supp 2d 344 (SDNY 2009) ...........................................11

*Langford v Intl. Union of Operating Eng'rs, Local 30*,
    765 F Supp 2d 486 (SDNY 2011) ...................................................17 n 25

*Lennert-Gonzalez v Delta Airlines, Inc.*,
    2013 US Dist LEXIS 27832 (SDNY 2013).......................................21

*Local 342, Long Is. Pub. Serv. Empls. v Town Bd.*,
    31 F3d 1191 (2d Cir 1994)...............................................................12 n 17

*Lopez v Bay Shore Union Free Sch. Dist.*,
    668 F Supp 2d 406 (EDNY 2009) ...................................................13

*Lucero v Nettle Cr. Sch. Corp.*, 566 F3d 720 (7th Cir 2009).......................23 n 36

*Luckey v Visalia Unified Sch. Dist.*,
    2015 US Dist LEXIS 166504 (ED Cal Dec. 10, 2015),
    *aff'd*, 671 F App'x 1005 (9th Cir 2016).............................................23 n 36

*Mahoney v Metro. Tr. Auth.*, 2014 NY Slip Op 32774(U)
    (Sup Ct, NY County 2014) ..............................................................11 n 16

*Mandell v County of Suffolk*, 316 F3d 368 (2d Cir 2003)..............................22 n 35, 25 n 37

*Martin v County of Nassau*, 692 F Supp 2d 282 (EDNY 2010)....................13

*McDonnell Douglas Corp. v Green*, 411 US 792 (1973) ..............................10 n 13

*McPherson v City of NY*, 2011 US Dist LEXIS 108804
    (SDNY Sep. 23, 2011) ........................................................................23 n 36

*McWhite v NY City Hous. Auth.*, 2008 US Dist LEXIS 29145
    (EDNY Apr. 10, 2008)........................................................................23 n 36

*Mihalik v Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F3d 102 (2d Cir 2013).................................................................10 n 15

*Mitchell v Suny Upstate Med. Univ.*, 2017 US Dist LEXIS 38349
    (NDNY Mar. 17, 2017).......................................................................23 n 36

*Moccio v Cornell Univ.*, 889 F Supp 2d 539 (SDNY 2012),
    *aff'd*, 526 F App'x 124 (2d Cir 2013)................................................27

*Moore v Shands Jacksonville Med. Ctr.*, 2013 US Dist LEXIS 190745
    (MD Fla Oct. 18, 2013)......................................................................23 n 36

*Morgan v NYS AG Off.*, 2013 US Dist LEXIS 17458
    (SDNY Feb. 8, 2013)..........................................................................7 n 11

*Mullins v City of NY*, 626 F3d 47 (2d Cir 2010)...........................................25 n 37

*Muniz v El Paso Marriott*, 773 F Supp 2d 674 (WD Tex 2011) ..................23 n 36

*Murdaugh v City of NY*, 2011 US Dist LEXIS 23333
    (SDNY Mar. 8, 2011) ........................................................................7 n 11

*Murphy v ERA United Realty*, 251 AD2d 469 (2nd Dept 1998) ..................10 n 15

*National Railroad Passenger Corporation v Morgan*,
    536 US 101 (2002)..............................................................................10 n 13

*Natl. Gear & Piston, Inc. v Cummins Power Sys. , LLC*,
    861 F Supp 2d 344 (SDNY 2012) .....................................................8

*Nelson v Deming*, 140 F Supp 3d 248 (WDNY 2015) ..................................6

*NLRB v Robbins Tire & Rubber Co.*, 437 US 214 (1978)............................25 n 37

*Obondi v UT Southwestern Med. Ctr.*, 2017 US Dist LEXIS 98324
(ND Tex June 23, 2017)........................................................................23 n 36

*Pagan v Morrisania Neighborhood Family Health Ctr.*,
2014 US Dist LEXIS 14978 (SDNY Jan. 22, 2014)..........................5 n 9

*Patterson v Xerox Corp.*, 2012 US Dist LEXIS 82052
(WDNY June 13, 2012)......................................................................23 n 36

*Pelayo v Port Auth.*, 893 F Supp 2d 632 (SDNY 2012)..................................13

*People v Baynes*, 410 NE2d 894 (Ill App 1980),
*rev'd on other grounds,* 430 NE2d 1070 (Ill 1981)...........................17 n 26

*Perkins v Perkins*, 226 AD2d 610 (2nd Dept 1996)......................................19

*Perrin v Connecticut Dept. of Corr.*, 2016 US Dist LEXIS 154399
(D Conn Nov. 7, 2016) .......................................................................26 n 39

*Petrisch v JP Morgan Chase*, 789 F Supp 2d 437 (SDNY 2011) .................26

*Place v City of Eugene*, 2008 US Dist LEXIS 11398
(D Or Feb. 13, 2008),
*aff'd,* 332 F App'x 402 (9th Cir 2009)...............................................23 n 36

*Powell v Metro One Loss Prevention Servs. Group (Guard Div. NY), Inc.*,
2015 US Dist LEXIS 138345 (SDNY Sep. 29, 2015).......................11 n 16

*Price Waterhouse v Hopkins*, 490 US 228 (1989)........................................16 n 23

*Red Earth LLC v United States*, 657 F3d 138 (2d Cir 2011).........................28

*Reeves v Sanderson Plumbing Prods.*, 530 US 133 (2000)...........................11 n 16

*Rhoads v Rieth-Riley Constr. Co.*, 2013 US Dist LEXIS 42223
(ND Ind Mar. 26, 2013 ......................................................................23 n 36

*Richardson v NY State Dept. of Corr. Serv.*, 180 F3d 426 (2d Cir 1999)......11 n 16

*Rivera v Rochester Genesee Regional Transp. Auth.*,
743 F3d 11 (2d Cir 2012)...................................................................11 n 16

*Riviello v Waldron*, 47 NY2d 297 (1979).....................................................11

*Russo v NY Presbyt. Hosp.*, 972 F Supp 2d 429 (EDNY 2013) ....................16

*Santiago v Crown Hgts. Ctr. for Nursing & Rehabilitation,*
    2017 US Dist LEXIS 27356 (EDNY Feb. 24, 2017)..........................5 n 9

*Scholl v Educ. Mgt. Corp.,* 2012 US Dist LEXIS 127293
    (ND Ind Sep. 7, 2012).......................................................................23 n 36

*Smith v Johnson,* 2014 US Dist LEXIS 151193 (SDNY Oct. 24, 2014),
    *aff'd,* 636 F App'x 34 (2d Cir 2016)..................................................27 n 40

*Soublet v Louisiana Tax Commn.,* 766 F Supp 2d 723 (ED La 2011)...........23 n 36

*Stajic v City of NY,* 214 F Supp 3d 230 (SDNY 2016)...................................22 n 35 25 n 37

*Starr Intl. Co. v FRB,* 906 F Supp 2d 202 (SDNY 2012),
    *aff'd,* 742 F3d 37 (2d Cir 2014).........................................................5 n 8

*Stephens v Gutierrez,* 2010 US Dist LEXIS 24074
    (ED Va Mar. 15, 2010) .....................................................................23 n 36

*Stern v Trustees of Columbia Univ.,* 131 F3d 305 (2d Cir 1997).................17 n 25

*Taylor v Chao,* 516 F Supp 2d 128 (DDC 2007),
    *aff'd,* 571 F3d 1313 (2009) ..............................................................23 n 36

*Torres v NY Methodist Hosp.,* 2016 US Dist LEXIS 2365
    (EDNY Jan. 7, 2016) ........................................................................10 n 15

*Trustees of Michigan Regional Council of Carpenters'*
    *Emple. Benefits Fund v H.B. Stubbs Co.,*
    91 F Supp 3d 879 (ED Mich 2014)....................................................21

*Uhl v Komatsu Forklift Co.,* 512 F3d 294 (6th Cir 2008)..............................17 n 26

*United States v Kelly,* 519 F Supp 1029 (D Mass 1981) ...............................17 n 26

*United States v Morley,* 353 F App'x 256 (11th Cir 2009) ...........................17 n 26

*Valcarcel v First Quality Maintenance,* 41 Misc 3d 1222(A),
    2013 NY Slip Op 51793(U) (Sup Ct, Queens County 2013) ............11 n 16

*Vargas v Morgan Stanley,* 2011 US Dist LEXIS 108952
    (SDNY Sep. 23, 2011)......................................................................27 n 40

*Vasquez v Empress Ambulance Serv.,* 835 F3d 267 (2d Cir 2016)...............10 n 15

*Velikonja v Gonzales,* 466 F3d 122 (2006).....................................................10 n 13

*Whidbee v Garzarelli Food Specialties, Inc.*, 223 F3d 62 (2d Cir 2000) ......11 n 16

*Williams v NY City Hous. Auth.*, 61 AD3d 62 (1st Dept 2009) ......................18

*Woods v Lancaster Ind. Sch. Dist.*, 834 F Supp 2d 512 (ND Tex 2011) .......21

*Workneh v Super Shuttle Intl., Inc.*, 2016 US Dist LEXIS 136906
(SDNY Sep. 30, 2016) ........................................................................26

*Zelaya v UNICCO Serv. Co.*, 733 F Supp 2d 121 (DDC 2010) ....................23 n 36

## Statutes

28 U.S.C. § 1367 ....................................................................................27

42 U.S.C. §§ 2000e et seq ...........................................................................1

Fed. R. Civ. P. 12(b) ...................................................................................1

Fed. R. Civ. P. 12(b)(6) ...............................................................................5

Fed. R. Civ. P. 12(b)(7) ..............................................................................11

Fed. R. Civ. P. 12(d) ................................................................................1, 6

Fed. R. Civ. P. 19(a) ...................................................................................12

N.Y. Civ. Serv. Law § 209-a.1(e) ..............................................................12 n 17

N.Y.C. Admin. Code § 8-107(1)(a)(3) ..........................................................7, 13

N.Y.C. Admin. Code § 8-107(7) .....................................................................7

N.Y.C. Admin. Code § 8-502(d) .....................................................................7

N.Y.C. Admin. Code §§ 8-101 et seq .............................................................1

N.Y.C. Admin. Code §§ 8-602 and 8-603 ........................................................9

This is a suit alleging gender and sexual-orientation discrimination, and retaliation. The Plaintiff is a New York State Court Officer and a member of the New York State Court Officers Association (the "Union). She brings this action against her employer, the NYS Unified Court System Office of Court Administration ( "OCA" or "Employer") and against the president of the Union, Dennis W. Quirk ("Quirk"). The Plaintiff claims that the OCA has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII") and that Quirk has violated the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 et seq. ("NYCHRL"). She does not sue the Union.

The Plaintiff has moved for a preliminary injunction, and Quirk is moving to dismiss under Federal Rules of Civil Procedure 12(b) and 12(d). This memorandum of law is being submitted both in support of Quirk's motion and in opposition to the Plaintiff's motion. In either case, the declarations, affidavits and exhibits also are identical.

## I.    Background

### A.    The Facts

The facts are apparent from the attached affidavits of court officers John J. Allen, Gerard Giles, Cynthia Perez, Renée Reddick, Jerry Rocco and Kevin Sullivan, affidavit of union vice-president Ted Kantor, and declaration of defendant Dennis W. Quirk – and from the exhibits.[1]

---

[1]    Labeled in chronological order, the exhibits are as follows: (A) 1999-01-27 plaintiff's arrest document (filing false instrument); (B) 1999-02-04 letter from Mr. Quirk to the OCA; (C) 2002-01-07 OCA claim form in *Duch v Kohn*; (D) 2004-01-09 'title standards' for Major II; (E) 2008-07-24 collective bargaining agreement; (F) 2008-07-24 letter re employee-organization leave; (G) 2012-01-06 job posting for Major II; (H) 2014-05-02 job posting for Captain; (I) 2014 anonymous letter; (J) 2014-11-02 letter from officer Dalton; (K) 2014-12-23 job posting for Captain; (L) 2015-12-11 job posting for Major II; (M) 2016-02-08 plaintiff's security benefit card; (N) 2016-02-17 evaluation forms; (O) 2016-02-19 memo to Judge Fisher re candidates for Major II; (P) 2016-04-22 letter from plaintiff's counsel to Chief Judge Janet DiFiore; (Q) 2016-04-22 UCS claim of discriminatory treatment; (R) 2016-09-13 job posting for Captain; (S) 2016-12-13 charge

**[1.]** Quirk has always been on full-time leave from the OCA.[2] He is not a misogynist.[3]

**[2.]** Each of the eighteen 'commands' elects a delegate, who is never the topmost supervisor. (Quirk Decl. ¶ 14.) **[3.]** Only the OCA selects court officers; Quirk does not. (Quirk Decl. ¶ 19.)[4] **[4.]** In 1999, Quirk saved the Plaintiff.[5]

---

of discrimination; (T) 2017-01-24 letter from Hon. Fern A. Fisher to Mr. Quirk; (U) 2017-02-06 letter from plaintiff's counsel to Mr. Quirk; (V) 2017-02-07 letter from Mr. Baron to plaintiff's counsel; (W) 2017-02-10 letter from plaintiff's counsel to Hon. Fern. A Fisher; (X) 2017-03-07 cover letter from EEOC to NYSCOA; (Y) 2017-03-07 EEOC notice of charge of discrimination; (Z) 2017-03-20 letter from Mr. Baron to Hon. Fern A. Fisher; (AA) 2017-03-23 text message to Jack Allen; (BB) 2017-03-28 affidavit of Mr. Quirk in opposition to charge; (CC) 2017-03-28 NYSCOA position statement; (DD) 2017-04-07 OCA position statement; (EE) 2017-04-14 letter from plaintiff's counsel to Hon. Fern. A Fisher; (FF) 2017-04-19 letter from EEOC to plaintiff's counsel; (GG) 2017-04-20 EEOC notice of right to sue; and (HH) 2017-06-14 complaint.

2    Quirk is the president of the Union and has been for over forty-three (43) years. (Quirk Decl. ¶ 2.) Although Quirk is technically a court officer, throughout his presidency, he has been on full-time 'employee organization' leave, pursuant to the collective bargaining agreement ("CBA") (exh. E) and a contemporaneous letter (exh. F). (Quirk Decl. ¶ 5.) Even if *arguendo* Quirk would not be on full-time leave, the Plaintiff's rank has always been higher; Quirk has never been her supervisor. (*Id.* ¶ 7.) Quirk's role as president of the Union is merely to advocate for the members within the framework of the OCA's decisions, and certainly not to intrude into those decisions. (*Id.* ¶ 9.)

3    During over three decades of marriage, before the untimely passing of Quirk's wife, the two were thoroughly happy. (Quirk Decl. ¶ 10.) When Quirk got married, he knew that children, including daughters, are a normal consequence; Quirk feels only blessed for his four daughters, as well as for his son. (*Id.* ¶ 11.)

4    According to the Complaint (¶ 27), Quirk influences the appointment of judges. Not so: his only involvement is that, when an individual running for judge or elected office seeks the Union's endorsement, Quirk either advises the Union to give it or does not so advise – after evaluating, among other things, the individual's likely effect on the well-being of the members, in particular, and unionized workers, in general. (Quirk Decl. ¶ 20.)

According to the Complaint, among other scurrilous allegations: (a) Quirk has told court officers that Judge Kaye does not like homosexuals (¶ 32); (b) Quirk has 'influenced' the OCA as to who is selected for court-officer positions (¶ 36); (c) Quirk has told the Plaintiff that, by submitting judicial recommendations, she 'ruined' something (¶ 41); (d) the Plaintiff's receipt of a Lieutenant position disrupted a selection 'plan' of Quirk's (¶ 42); (e) Quirk has told the Plaintiff that he had made selection 'demands' of the OCA (¶

[5.] In March 2014, Quirk saved the Plaintiff again, after she had engaged in abusive behavior both inside the locker room and out. [6.] In June 2014, the Plaintiff continued to abuse officers. [7.] In late 2014, she continued to do so. [8.] Later in 2014, the Union received a letter of complaint about the Plaintiff, and Quirk saved her again. [9.] At a party in January 2015, the Plaintiff asked Quirk to dance with her, and they did, for several dances. (Quirk Decl. ¶ 32; Rocco Aff. ¶ 6.) [10.] In late 2015, the Plaintiff continued to abuse officers.[6]

[11.] On April 22, 2016, the Plaintiff filed her OCA claim (exh. Q). [12.] In May 2016, Quirk called the Plaintiff's friend Dalton to advise her that he was giving the OCA a letter that she had written. [13.] On December 13, 2016, the Plaintiff filed a charge with the EEOC,

---

43); (f) Quirk received no complaints about the Plaintiff (¶ 47); (g) Quirk has 'ordered' who should work at 100 Centre Street (¶ 49); (h) Quirk has told the Plaintiff that she should shut her mouth and not ask judges to help her, and described judges as monkeys, who should also shut their mouths (¶ 50); (i) Quirk lied to the Plaintiff about a journalist (¶ 53); (j) Quirk has directed the OCA to create positions, and solely for the benefit of Jack Allen's career (¶ 58); (k) Quirk has directed the OCA to prolong the application process for Major (¶ 66); and (l) Quirk has pre-determined who would be promoted (¶ 77). Quirk denies all of this (while admitting nothing else, unless he does so explicitly). (Quirk Decl. ¶ 21.)

5    According to the Complaint (¶ 31), upon her start as a court officer, Quirk asked the Plaintiff whether she was a lesbian and told her that Judge Judith Kaye did not like gay people and that she should try to get back her old job at the post office. This is a base defamation. From the day the Plaintiff was hired, in September 1998, she made a point of telling everyone that she was a lesbian – as she now 'outs' Mogulescu. In January 1999, the Plaintiff appeared at Quirk's office because she had been arrested. Normally, in such a situation, the court officer is fired. Quirk quickly intervened to save the Plaintiff. Judge Kaye was never discussed. (Quirk Decl. ¶ 22-23.)

6    In late 2015, Captain Gerard Giles noticed that the Plaintiff overlooked certain officers when overtime was available and treated others with obvious disdain even when their requests were routine. In the disfavorees' absence, she would refer to them with derogatory language. (Giles Aff. ¶ 6. In late 2015, the Plaintiff informed Giles that Captain Allen would not authorize Giles' overtime. Later, Giles learned that this was not the case. The incident is one of many in which Giles witnessed the Plaintiff attempting to manipulate events and people. (Id. ¶ 9.)

against the OCA and the Union (exh. S).[7] **[14.]** On January 24, 2017, the Honorable Judge Fern A. Fisher sent a letter to Quirk. (Exh. T.) **[15.]** On February 1, 2017, Quirk gave the letter to the Delegates. **[16.]** He also gave the letter to the Plaintiff. **[17.]** On March 7, 2017, the EEOC gave the Union notice (exh. Y) of the Plaintiff's charge of discrimination. **[18.]** On March 28, 2017, the Union filed its position statement (exh. CC).

**[19.]** On March 23, 2017, Major Allen received a text message: "I hope all the heads of criminal court get a rash on [t]heir balls for approving Angela coming here!" (Exh. AA; Allen Aff. ¶ 15.) **[20.]** On April 4, 2017, the Union convened a meeting of the Plaintiff's subordinates to remind them to take such feelings 'up' with the Union – not 'out' on the Plaintiff. **[21.]** On April 7, 2017, the Plaintiff's OCA claim (exh. Q) was first disclosed, as an attachment to the OCA's EEOC position statement (exh. DD). **[22.]** On June 17, 2017, although the Plaintiff ordered her subordinates to wear their vests, she did not wear hers, as was required – until ordered to do so by Major Allen. (Quirk Decl. ¶ 54.)

### B. Procedural History

This is the Plaintiff's third bite at the apple. The first was a claim filed in April 2016 with the OCA. (Exh. Q.) The second bite was a charge filed in December 2016 with the EEOC, against the Union, not Quirk. (Exh. S.)

---

7    According to the Complaint (¶ 5), on March 17, 2017, the Plaintiff amended her EEOC charge with additional allegations of retaliation. This is total news to Quirk. Neither he nor the Union has ever seen such an amendment or received EEOC notice thereof. (Quirk Decl. ¶ 49.)

## II. Applicable Legal Standards

### A. Standards for Dismissal

Pursuant to Fed. R. Civ. P. 12(b)(6), dismissal is warranted for "failure to state a claim upon which relief can be granted". "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (*Ashcroft v Iqbal*, 556 US 662, 678 [2009].) "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." (*Bell Atl. Corp. v Twombly*, 550 US 544, 558 [2007] [internal quotation marks and ellipsis omitted].) "Because the [plaintiff has] not nudged [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed." (*Twombly*, 550 at 570.)[8] These rules apply with equal force to NYCHRL claims.[9]

---

8    Allegations "become implausible when the court's commonsense credits far more likely inferences from the available facts. Plausibility thus depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the available alternative explanations." (*Arar v Ashcroft*, 585 F3d 559, 617 [2d Cir 2009] [citation omitted].) "[W]here there is an obvious alternative explanation that is more likely, the plaintiff's cause of action is not plausible and must be dismissed." (*Holmes v Air Line Pilots Assn.*, 745 F Supp 2d 176, 193 [EDNY 2010] [internal quotation marks omitted].) "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (*Starr Intl. Co. v FRB*, 906 F Supp 2d 202, 215 [SDNY 2012] [internal quotation marks omitted], *aff'd*, 742 F3d 37 [2d Cir 2014].)

9    "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Therefore, despite the more liberal construction of the NYCHRL, a plaintiff must still allege facts giving rise to an inference of discrimination." (*Pagan v Morrisania Neighborhood Family Health Ctr.*, 2014 US Dist LEXIS 14978, at *9 [SDNY Jan. 22, 2014] [citations and internal quotation marks, brackets and ellipsis omitted].) "Plaintiff's NYCHRL ... claim fails under both *McDonnell-Douglas* and *Twombly/Iqbal* [because] there is no plausible inference" that the complained-of events resulted from her gender or sexual orientation. (*Acosta v City of NY*, 2012 US Dist LEXIS 60460, at *17-18 [SDNY Apr. 26, 2012].) "[A]t a minimum, ... claims under the NYCHRL must meet the standard of pleading set forth in *Twombly* and *Iqbal*". (*Fattoruso v Hilton Grand*

Under Rule 12(d), if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Quirk "may be granted summary judgment before an answer is filed." (*Nelson v Deming*, 140 F Supp 3d 248, 257 [WDNY 2015].) "Although claims under the NYCHRL are 'more liberally construed than claims under Title VII and the NY[S]HRL, the NYCHRL does not alter the kind, quality or nature of evidence that is necessary to support or defeat a motion for summary judgment under Rule 56.'" (*Ballard v Children's Aid Socy.*, 781 F Supp 2d 198, 211 [SDNY 2011].)

### B. Standard for a Preliminary Injunction

"When, as here, a preliminary injunction 'will affect government action taken in the public interest pursuant to a statute or regulatory scheme,' the moving party must demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction." (*Friends of the E. Hampton Airport, Inc. v Town of E. Hampton*, 841 F3d 133, 143 [2d Cir 2016], *cert. den.*, 2017 U.S. LEXIS 4165, ___ US ___ [2017].)

### C. Applicable Principles of the NYCHRL

"'Mere personality conflicts must not be mistaken for unlawful discrimination, lest the antidiscrimination laws become a general civility code,' even under the NYCHRL's more lenient

---

Vacations Co., LLC, 873 F Supp 2d 569, 576 [SDNY 2012] [internal brackets omitted], *aff'd*, 525 F App'x 26 [2d Cir 2013]; *Ardigo v J. Christopher Capital, LLC*, 2013 US Dist LEXIS 41740, at *8 [SDNY Mar. 25, 2013] [internal brackets omitted]; *Dechberry v NY City Fire Dept.*, 124 F Supp 3d 131, 160 [EDNY 2015] [internal brackets omitted].) The "NYCHRL claims must be dismissed for failure to state a plausible claim upon which relief may be granted." (*Dechberry*, 124 F Supp 3d at 160.) The Court analyzes the facts "to determine [whether the] plaintiff has satisfied the pleading requirements of *Iqbal* and *Twombly* with respect to [her] claims under the ... NYCHRL." (*Santiago v Crown Hgts. Ctr. for Nursing & Rehabilitation*, 2017 US Dist LEXIS 27356, at *16-17 [EDNY Feb. 24, 2017] [citation omitted].)

standard." *Davis-Bell v Columbia Univ.*, 851 F Supp 2d 650, 678 (SDNY 2012) (supervisor's yelling at African-American female).

The NYCHRL makes it unlawful for "an employer or an employee or agent thereof [to] discriminate against [the Plaintiff] in compensation or in terms, conditions or privileges of employment" because of *inter alia* her gender or sexual orientation. N.Y.C. Admin. Code § 8-107(1)(a)(3). The NYCHRL also makes it unlawful to retaliate or discriminate against the Plaintiff "because she has opposed" a practice forbidden by the NYCHRL "provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity." *Id.* § 8-107(7).

"A civil action commenced under the NYCHRL "must be commenced within three years after the alleged unlawful discriminatory practice … occurred." N.Y.C. Admin. Code § 8-502(d). "[T]he Second Circuit has yet to definitively opine on the issue of whether the filing of a charge with the EEOC serves to automatically toll the statute of limitations on claims asserted under the NYSHRL and NYCHRL". (*Kennedy v Fed. Express Corp.*, 2016 US Dist LEXIS 133146, at *29 [NDNY Sep. 28, 2016].) Seemingly, because the EEOC charge was brought only against the Union, but the Complaint is brought only against Quirk, tolling is *not* appropriate.[10] Moreover, this is not a case of a *continuing violation*.[11]

---

10. The Complaint was filed on June 14, 2017. Without tolling, the earliest incident can be on June 14, 2014. With tolling, the earliest incident can be on February 7, 2014. Only the alleged March 2014 meeting falls in between February 7 and June 14. With respect to that meeting, Judge Fern Fisher found for Quirk that he did not say 'c-nt', and moreover the Plaintiff never alleges that such a word was directed at *her*.

11. Prior to February 7, 2017, the only allegation against Quirk is that, in August 2008, he called the plaintiff into his office and remarked that, by submitting recommendations from judges, she had "ruined" a plan of his. (Compl. ¶ 41.) Any such incident – which, moreover, Quirk vigorously denies – cannot possibly be so related to the two alleged uses of the phrase 'bossy bitch' in 2014 to bring such a remark "within the limitations period

7

## III. Argument

### A. Overview of the Claims against Quirk

Given that the Plaintiff is represented by counsel, the Court has no obligation liberally to construe her complaint. (*Natl. Gear & Piston, Inc. v Cummins Power Sys., LLC*, 861 F Supp 2d 344, 370 [SDNY 2012].)

Much of the Complaint "consists of sporadic, discriminatory actions, taken by different coworkers". (*Bright v Coca Cola Refreshments USA, Inc.*, 2014 US Dist LEXIS 155565, at *21 [EDNY Nov. 3, 2014] [internal quotation marks omitted] [dismissing NYCHRL claims].) "Each claim is ... too distinct and unrelated to invoke even the more liberal NYCHRL doctrine." *Id.* at *71. Such allegations "concern a wide variety of ... conduct carried out by a number of different individuals. [T]he incidents are sporadic, and the plaintiff fails to connect" them. (*Grimes-*

---

by virtue of the continuing violation doctrine." (*Fleming v MaxMara United States, Inc.*, 644 F Supp 2d 247, 269 [EDNY 2009] [dismissing NYCHRL claim], *aff'd*, 371 F App'x 115 [2d Cir 2010].) Moreover, the eight-and-a-half years between August 2008 and February 2017 are too long a period to tack the earlier alleged incident to the later one, even under the NYCHRL. (See *Green v Continuum Health Partners, Inc.*, 2010 NY Slip Op 33877[U], *10-11 [Sup Ct, NY County 2010] [four years was too long], *aff'd*, 88 AD3d 487 [1st Dept 2011].)

In addition, the Plaintiff has simply not presented "sufficient facts demonstrating an ongoing discriminatory practice". (*Murdaugh v City of NY*, 2011 US Dist LEXIS 23333, at *10-11 [SDNY Mar. 8, 2011] [applying NYCHRL standard].) "Even under the more lenient NYCHRL, the [alleged remark] is not connected to claims of actionable conduct that occurred during the limitations period." (*Campbell v Cellco Partnership*, 860 F Supp 2d 284, 299 [SDNY 2012].) "Because of this, the [alleged remark] is dismissed as time barred." *Id.* "[T]here is no evidence that the [alleged remark is] sufficiently related to [any February 2017 remarks] to invoke the continuing violation doctrine, even under the lenient standard of NYCHRL." (*Anderson v City of NY*, 2012 US Dist LEXIS 182520, at *25-26 [EDNY Dec. 27, 2012] [dismissing NYCHRL claim].) The alleged remark "is a discrete event not otherwise tied to other allegations of ... discrimination. Therefore, the ... discrimination claim based on this event is dismissed as untimely." (*Morgan v NYS AG Off.*, 2013 US Dist LEXIS 17458, at *38 [SDNY Feb. 8, 2013].)

*Jenkins v Consol. Edison Co. of NY*, 2017 US Dist LEXIS 77710, at \*22-23 [SDNY May 22, 2017] [applying NYCHRL's more lenient standard].)

In the NYCHRL, together with N.Y.C. Admin. Code §§ 8-602 and 8-603, there are a dozen verbs describing prohibited actions, as follows: *abet, aid, coerce, compel, discriminate, incite, injure, interfere, intimidate, oppress, retaliate* and *threaten*. However, only the Complaint's ¶¶ 51, 54, 90, 103, 108, 115, 117, 119, 126, 127, 131 and 133 make Quirk the doer of an action. Even then, the paragraph merely says *the* discrimination, *the* interference, *the* retaliation or *the* threats – begging the question of *what* discrimination, *what* interference, *what* retaliation or *what* threats. For example, ¶ 90 claims that Chief Magliano had condoned *the* discrimination. *What* discrimination? As for the Complaint's *headings*, Quirk is said to be a doer only of *retaliation*. However, of the subject paragraphs (45 through 58), only two make Quirk a doer: (¶ 46) that Quirk was 'involved' in a decision to move the Plaintiff to MCC; and (¶ 58) that Quirk 'directed' the OCA to create a position solely for Allen's benefit. Such actions would be *discrimination*, not *retaliation*. Moreover, a mere "sense of being discriminated against" is not "significant." *Fisher v Vassar Coll.*, 70 F3d 1420, 1439 (2d Cir 1995).[12]

---

12    In *Casalino v NY State Catholic Health Plan, Inc.*, 2012 US Dist LEXIS 46233 (SDNY 2012), the plaintiff's NYCHRL allegations reduced to essentially one verbal encounter with her supervisor, one Michelson. "Apart from this one central interaction, Plaintiff elsewhere suggests that she was 'marginalized' and 'ignored' by Michelson during meetings and the like. Plaintiff places particular emphasis on her own reactions, noting that Michelson 'berated her and frightened her, reduced her to tears to the point where she could not leave her office.' Plaintiff's own reactions, however, even if credited by the jury as true, cannot themselves demonstrate Michelson's gender animus." *Id.* at \*21 (citations omitted).

**B. The Plaintiff's Cases**

In her motion for an injunction, the Plaintiff cites fifty-two (52) cases. In some, the Court actually dismisses the complaint[13] or rules that an injunction should *not* have been granted[14]. Others are distinguishable in that the plaintiff was harassed sexually[15] or in some other way[16]. The remaining cases will be distinguished *infra*.

---

13    In *Bennett v Health Mgt. Sys., Inc.*, 92 AD3d 29 (1st Dept 2011), the Court actually dismissed the complaint. In *Davis v Rynkewicz*, 2015 US Dist LEXIS 29171 (WDNY Mar. 10, 2015), the Court actually granted the relevant part of the defendants' motion for summary judgment. In *Gunnell v Utah Val. State Coll.*, 152 F3d 1253 (10th Cir 1998), the Court actually upheld a jury verdict in favor of the employer. In *Holt v Cont. Group*, 708 F2d 87 (2d Cir 1983), the Court merely remanded for further consideration. On remand, the district court actually "dismissed the complaint." (*Holt v KMI-Cont.*, 95 F3d 123, 127 [2d Cir 1996].) In *Jackson v NYS Dept. of Labor*, 2012 US Dist LEXIS 34366 (SDNY Mar. 12, 2012), the Court actually dismissed the NYCHRL claims. In *McDonnell Douglas Corp. v Green*, 411 US 792 (1973), the Court merely remanded the case, whereupon the trial court found for the employer (390 F Supp 501) and the court of appeals affirmed (528 F2d 1102). In *National Railroad Passenger Corporation v Morgan*, 536 US 101 (2002), the Court actually reversed a holding that "so long as one act falls within the charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for the purposes of liability." *Id.* at 114. In *Velikonja v Gonzales*, 466 F3d 122 (2006), the Court of Appeals actually dismissed all the claims except one – and, after remand, dismissed that one, too. (298 F App'x 8 [DC Cir 2008].)

14    In *Able v United States*, 44 F3d 128 (2d Cir 1995), homosexual members of the armed forces were challenging a new law embodying a 'don't ask, don't tell' policy. In deciding to issue a preliminary injunction, the district court had required merely a demonstration of "serious questions going to the merits" – and declined to apply the more rigorous standard of "likelihood of success". The Second Circuit held this to be error.

15    *Dillon v Ned Mgt.*, 85 F Supp 3d 639 (EDNY 2015) (direct contact with intimate body part, etc, termination); *Johnson v J. Walter Thompson U.S.A., LLC*, 224 F Supp 3d 296 (SDNY 2016) (CEO's incessantly saying that he would rape employees).; *Knox v Indiana*, 93 F3d 1327 (7th Cir 1996) (demanding sex); *Mihalik v Credit Agricole Cheuvreux N. Am., Inc.*, 715 F3d 102 (2d Cir 2013) (propositioning plaintiff, firing her); *Murphy v ERA United Realty*, 251 AD2d 469 (2nd Dept 1998) (fondling plaintiff's breasts, etc, termination); *Torres v NY-Methodist Hosp.*, 2016 US Dist LEXIS 2365 (EDNY Jan. 7, 2016) (requesting oral sex, leering at breasts, etc); *Vasquez v Empress Ambulance Serv.*, 835 F3d 267 (2d Cir 2016) (sending self-taken photo of erect genital, etc, termination).

**C.**  **Pursuant to Rule 12(b)(7), the Complaint should be dismissed because the Union has not been joined.**

**1.**  **Injunctive relief would affect the Union.**

In the complained-of incidents, Quirk was acting within the scope of his presidency. The Union "could have reasonably anticipated" those events. (*Almonte v NY City Hous. Auth.*, 1990 US Dist LEXIS 9341, at *9 [SDNY July 27, 1990].) It is clear that Quirk's conduct fell within the ambit of his presidency, upon a weighing of the following factors:

> the connection between the time, place and occasion for the act; the history of the relationship between [Union and Quirk] as spelled out in actual practice; whether the act is one commonly done by [the president of a small union]; the extent of departure from normal methods of performance; and whether the specific act was one that the [Union] could reasonably have anticipated....

(*Riviello v Waldron*, 47 NY2d 297, 303 [1979]. Accord, *Adorno v Corr. Servs. Corp.*, 312 F Supp 2d 505, 516-517 [SDNY 2004]; *Kwon v Yun*, 606 F Supp 2d 344, 362-363 [SDNY 2009].)

---

In the instant case, although the Plaintiff dispensed unwelcome sexual attention (Quirk Decl. ¶ 25), she never received it.

16  The 'n' word was used in *Hussain v Long Is. R.R.*, 2002 US Dist LEXIS 17807 (SDNY Sep. 20, 2002); *Richardson v NY State Dept. of Corr. Serv.*, 180 F3d 426 (2d Cir 1999); *Rivera v Rochester Genesee Regional Transp. Auth.*, 743 F3d 11 (2d Cir 2012); and *Valcarcel v First Quality Maintenance*, 41 Misc 3d 1222(A), 2013 NY Slip Op 51793(U) (Sup Ct, Queens County 2013). In *Whidbee v Garzarelli Food Specialties, Inc.*, 223 F3d 62 (2d Cir 2000), the talk was of lynching.

In *Feingold v New York*, 366 F3d 138 (2d Cir 2004), coworkers made anti-Semitic remarks. In *Reeves v Sanderson Plumbing Prods.*, 530 US 133 (2000), the employer regularly told the plaintiff, whose rate of productivity was nearly identical to that of a much younger coworker, that she was too old, before terminating her.

In the instant case, the 'd' word was never used. Cf. *Benussi v UBS Fin. Servs.*, 2014 US Dist LEXIS 18642 (SDNY Feb. 13, 2014); *Mahoney v Metro. Tr. Auth.*, 2014 NY Slip Op 32774(U) (Sup Ct, NY County 2014); *Powell v Metro One Loss Prevention Servs. Group (Guard Div. NY), Inc.*, 2015 US Dist LEXIS 138345 (SDNY Sep. 29, 2015).

The acts are within the scope of Quirk's presidency because they were performed while he was "engaged generally in the business" of the Union. (*Harisch v Goldberg*, 2016 US Dist LEXIS 39494, at \*42 [SDNY Mar. 25, 2016].)

In both the Complaint and her motion, the Plaintiff seeks to enjoin Quirk in the operation of his presidency: an injunction against Quirk is an injunction against the Union.

> If the relief sought by plaintiffs is granted the affirmative injunction could effect implementation of the collective bargaining agreement. If such action is deemed appropriate, and the Union were not joined complete relief among the present parties may be impaired. As such, the Union is a party to be joined....

(*Coker v Marmon Group, Inc.*, 455 F Supp 398, 401 [DSC 1978].) Joinder is necessary in that the Plaintiff is seeking "injunctive relief which would effect the collective bargaining agreement." (*Hawkins v Allis-Chalmers Corp.*, 527 F Supp 895, 897 [WD Mo 1981].)

## 2. The other requested relief would affect the Collective Bargaining Agreement.

Resolving the Plaintiff's claims may require this Court to interpret the following sections of the collective bargaining agreement (exh. E): 4.7, employee organization leave; 7.3, performance evaluation; 9.5, leave to file a claim; 13.7, evaluations and personnel folders; 13.13, request for reassignment or transfer; 14.7, labor/management subcommittee; 15.1, discriminatory practices; 24.6, review of penalty or punishment; and 25.1, non-discriminatory union representation.[17] Accordingly, the Union should be "joined as a party defendant under Rule 19(a), Fed. R. Civ. P., because the decree entered by the court may affect, in some way, its collective bargaining agreement". (*EEOC v MacMillan Bloedel Containers, Inc.*, 503 F2d 1086,

---

17      Although the CBA expired on March 31, 2011, insofar as is relevant, the parties have been continuing "all the terms of an expired agreement until a new agreement is negotiated." (Quirk Decl. ¶ 5 n 2; N.Y. Civ. Serv. Law § 209-a.1(e); see *Local 342, Long Is. Pub. Serv. Empls. v Town Bd.*, 31 F3d 1191, 1195 [2d Cir 1994].)

1095 [6th Cir 1974] [internal quotation marks omitted].) The Union's presence is "necessary for both complete relief and protection of the unions' interests since contracts to which they are signators may be affected by this action." (*Grogg v Gen. Motors Corp.*, 72 FRD 523, 533 [SDNY 1976].)

### D. Dismissal of the Discrimination Claim against Quirk

Quirk is simply not "an employer or an employee or agent thereof" as required by N.Y.C. Admin. Code § 8-107(1)(a)(3).

#### 1. Discrimination by the Employer

##### a. Quirk does not control the Employer.

In the Complaint, the Plaintiff insists that Quirk is a *de facto* policy-maker for the OCA, that he somehow controls and directs the OCA. These unsubstantiated claims, vigorously denied by both Quirk and the OCA, are simply not plausible.

Quirk is the president of the Union, and as such, it is not plausible that he is a *de facto* policy-maker for the Employer. (See *Lopez v Bay Shore Union Free Sch. Dist.*, 668 F Supp 2d 406, 418 [EDNY 2009] [high school dean of students as policy-maker for school district].) Quirk is the president of the Union, and yet the complaint states that he controls the Employer: such a claim is not plausible. (See *Martin v County of Nassau*, 692 F Supp 2d 282, 292 [EDNY 2010] [district attorney as controlling police officers].) Plaintiffs' allegation that the Union president could have put such policies into effect vis-à-vis the Employer is simply not plausible. (See *Crab House of Douglaston v Newsday Inc.*, 801 F Supp 2d 64, 76 [EDNY 2011] [former president of news publication as effecting policies].) It is not plausible that the Employer would be subject to direction from the president of the Union. (See *Pelayo v Port Auth.*, 893 F Supp 2d 632, 639 [SDNY 2012] [Port Authority as directing U.S. Customs and Border Protection].)

### b.  In any event, the OCA did not discriminate.

On April 7, 2017, the OCA submitted its 'position statement' in opposition to the Plaintiff's second bite at the apple, her EEOC charge. In a nutshell, after an exhaustive process, an OCA interview panel found that Allen's communication and interpersonal skills were *excellent* — whereas the Plaintiff's were merely *very good*. Moreover, the Plaintiff's "experience was not quite as broad as Allen's, as she had not served in any citywide command positions, nor had she risen to the rank of captain as Allen had." (Exh. DD, esp. pp. 6-7.) Doubtless, the points in the position statement will be presented, at greater length than here, in the OCA's papers.[18]

### 2.  Discrimination Directly by Quirk

As aforesaid, in March 2014, Quirk saved the Plaintiff, after she had engaged in abusive behavior both inside the locker room and out.[19] In June 2014, the Plaintiff continued to abuse

---

18  The Plaintiff's displeasure with the OCA's spurning her for Allen appears to be at the foundation of all of her bites at the apple. Nevertheless, she never puts the rejection in perspective, by contending that there were no other positions that might also have advanced her career. On information and belief, there were. The Plaintiff's failure to address this issue puts in grave doubt whether she was even damaged by the rejection.

19  According to the Complaint (¶ 90), at a meeting in March 2014, Quirk called Judge Tamiko Amaker a "c-nt" and the Plaintiff a "bossy bitch". Not so. *First*, at no time was Judge Amaker mentioned or the word "c-nt" used. *Second*, the purpose of the meeting was to discuss staffing conditions, and the Plaintiff's abusive behavior to other court officers. (Quirk Decl. ¶ 24.)

For example, many female officers had complained to the Union about the way the Plaintiff watched them getting dressed and undressed in the locker room. Two had complained to Quirk that the Plaintiff expressed longing for their breasts. (Quirk Decl. ¶ 25.)

At the meeting in March 2014, which was essentially a brief counseling session for the Plaintiff, and which took place after Quirk had carefully gathered all the facts, although Quirk may have told her that she was in danger of being perceived as a 'bossy bitch', Quirk did not actually *call* her one, and that phrase is no more candid than Quirk would have used in speaking to a male court officer. In general, Quirk does not mince words,

officers.[20] In late 2014, she continued to do so.[21] Later in 2014, the Union received a letter of complaint about the Plaintiff, and Quirk saved her again.[22] The Plaintiff bases her claim of direct

---

and he gets straight to the point, and that is what is expected from a hard-pressed union official. (Quirk Decl. ¶ 26.)

20    In June 2014, Court Officer Jerry Rocco requested a transfer from 100 Centre Street New York Criminal Court to Richmond Criminal Court. (Rocco Aff. ¶ 2.) Rocco requested the transfer because – after Rocco complained to the Union about the Plaintiff for attempting to change the lunch hours of the court officers assigned to the lobby security, the Plaintiff became angry at him and started to treat him poorly. (*Id.* ¶ 3.)

In June 2014, the Plaintiff had mistreated Officer Rocco and some other officers, especially with respect to lunch hours. Rocco had brought this to the Union's attention. As a result, the Plaintiff began to single-out Rocco – reprimanding him for matters in the lobby over which he had no direct control. (Allen Aff. ¶ 7.)

21    In late 2014, there was a meeting attended by Sergeant Cynthia Sahler Perez, Sergeant Michael Sweeney, Sergeant Kevin Sullivan and Major Thomas Garvey. (Sullivan Aff. ¶ 3.) In the meeting, the sergeants voiced their concerns regarding the Plaintiff's behavior: specifically, that she was moving court officers to different parts in the building not for the good of the Court, but merely to spite those officers. (*Id.* ¶ 4.)

At the time, the Plaintiff was the sergeants' supervisor, and they were concerned about her irrational behavior regarding staffing and other daily command decisions. (Perez Aff. ¶ 2.) The behavior involved the Plaintiff's daily dealings with the officers. (*Id.* ¶ 3.) Major Garvey was the Plaintiff's own supervisor, and he assured the sergeants that he would address the problem. (*Id.* ¶ 4.)

22    In late 2014, the Union received an anonymous letter, alleging: the Plaintiff favors court officers who are white and Irish; in promotions, she discriminates against Hispanics; in summer vacations, she favors her own circle; and her friends get more overtime. (Exh. I.) Both the Plaintiff and her friend Dalton, *infra*, are 'white' and of Irish-American extraction. (Quirk Decl. ¶ 27.) Court officer Renée Reddick has reviewed the anonymous letter and knows its contents to be accurate. (Reddick Aff. ¶¶ 2, 4.)

Upon receiving this letter, Quirk investigated these allegations. Rather than use them to destroy the Plaintiff's career, he made them into a springboard, for an agenda to save and further her career. (Quirk Decl. ¶ 28.) Of course, Quirk's ensuing discussions with the Plaintiff needed at times to be frank. His mission was to counsel the Plaintiff on the need – not only to treat all fellow officers with respect – but to be perceived as doing so. Again, Quirk may have told the Plaintiff that she was in danger of being perceived as a 'bossy bitch', but he did not actually *call* her one. (*Id.* ¶ 29.)

discrimination by Quirk only upon two warnings against being perceived as a 'bossy bitch',
given during closed-door counseling sessions in 2014.[23]

In *Russo v NY Presbyt. Hosp.*, 972 F Supp 3d 429 (EDNY 2013), the plaintiff alleged that
a coworker twice made her plaintiff "feel uncomfortable" sexually. *Id.* at 453. Said the Court:

> [T]hese two isolated incidents over the four-year period that [they]
> worked together are de minimis and do not rise to more than 'petty
> slights or trivial inconveniences.' [The coworker] may have said
> offensive and inappropriate comments, acted inappropriately on
> occasion, and may have been a difficult person to work with, but
> there is no evidence he created an environment that was
> particularly difficult for women, subjected Plaintiff to unwanted
> sexual attention, or otherwise treated Plaintiff 'less well' because
> she was a woman.

*Id.*[24] In the instant case, too, the incidents are de minimis and no more than petty slights or
trivial inconveniences.[25]

---

In short, Quirk was merely exerting himself – once again – to save the Plaintiff's career,
as was and continues to be Quirk's practice with all members of the Union. Indeed, one
of the results of these exertions was that the Plaintiff asked court officer Bernadette
Dalton to submit a letter in response, *infra*. (Quirk Decl. ¶ 30.) At all relevant times, it
was well known that the Plaintiff spent most holidays with Dalton's family members and
was otherwise frequently in her company when off the job. When on the job, as Dalton's
supervisor in 2014 through 2016, the Plaintiff would shower her protégé with overtime
and choice assignments. (*Id.* ¶ 31.)

23    In the Plaintiff's case of *Price Waterhouse v Hopkins*, 490 US 228 (1989), partners who
      knew the plaintiff only slightly made gender-neutral remarks that were intensely critical
      of her – baldly stating that the plaintiff was universally disliked, and describing her as
      consistently annoying and irritating – yet these were people who had had very little
      contact with the plaintiff. In the instant case, Quirk was careful to gather all the facts and
      make an investigation, and then made only tailored remarks in private.

24    See also *Kaur v NY City Health & Hosps. Corp.*, 688 F Supp 2d 317 (SDNY 2010). The
      plaintiff was a hospital nurse in Harlem, of Asian-Indian origin. Her supervisor told her,
      "We don't want foreigners here. This is a black community. Indians eat shit and holy
      cow." A co-worker added, "Indians, you sell your daughters and never tell the truth."
      Nevertheless, the Court held that "the conduct Plaintiff complains of can only be
      interpreted reasonably as petty slights and trivial inconveniences." *Id.* at 340.

The phrase 'bossy bitch' is no more candid than Quirk might have used in speaking to a male court officer: 'f--k--g prick' does not reflect prohibited animus.[26] In *DePaula v State of NY*, 24 Misc 3d 1222(A), 1222A, 2009 NY Slip Op 51558(U), \*1 (Ct Cl 2009), *aff'd*, 82 AD3d 827 (2nd Dept 2011), an attorney's cell phone rang, and he talked. After twenty seconds, a court officer approached and confiscated the phone. Ten minutes later, the officer said, "You should know better!" The attorney responded, "Now, you're just being a prick." The officer replied, "You called me a prick; you're under arrest." Subsequently, the attorney sued for false arrest, and the Court ruled in his favor, suggesting that such fussiness does not befit one whose job can require "acts of extraordinary heroism and valor in order to protect human life in the face of acts of international terror." (24 Misc 3d 1222[A], 1222A, n 3, 2009 NY Slip Op 51558[U], \*4 [Ct Cl 2009].)

In the instant case, Quirk could rightly expect that his candid advice would not faze a court officer, that he need not address her with a bow and in French – that he could get straight to

---

25   In the following Plaintiff's cases, the incident was far from trivial: *Back v Hastings on Hudson Union Free Sch. Dist.*, 365 F3d 107 (2d Cir 2004) (terminating mother of young children); *Baldwin v Bank of Am., N.A.*, 42 Misc 3d 1203(A), 2013 NY Slip Op 52194(U) (Sup Ct, Kings County 2013) (terminating plaintiff for pregnancy-related lateness); *Esposito v Deutsche Bank AG*, 2008 US Dist LEXIS 101460 (SDNY Dec. 15, 2008) (employer's giving higher compensation to less experienced coworkers who were younger); *Gambale v Deutsche Bank AG*, 2003 US Dist LEXIS 11180 (SDNY July 2, 2003) (low number of females, suggesting glass ceiling); *Langford v Intl. Union of Operating Eng'rs, Local 30*, 765 F Supp 2d 486 (SDNY 2011) (union's discriminatory operation of apprenticeship program); *Stern v Trustees of Columbia Univ.*, 131 F3d 305 (2d Cir 1997) (employer's appointing search committee that was biased against plaintiff's national origin).

26   See e.g. *People v Baynes*, 410 NE2d 894, 899 (Ill App 1980), *rev'd on other grounds*, 430 NE2d 1070 (Ill 1981); *United States v Kelly*, 519 F Supp 1029, 1057 (D Mass 1981); *Fox Indus. v Gurovich*, 323 F Supp 2d 376, 381 (EDNY 2004); *Uhl v Komatsu Forklift Co.*, 512 F3d 294, 299 (6th Cir 2008); *United States v Morley*, 353 F App'x 256, 267 (11th Cir 2009).

the point. Passions run high in a closed-door union counseling session, and a certain amount of salty language is only to be expected. See *AT&T v NLRB*, 521 F2d 1159, 1161 [2d Cir 1975]. Any articulations of the phrase 'bossy bitch' would have been "in view of plaintiff's own experience and interpretation, nothing more than petty slights or trivial inconveniences, and thus are not actionable." (*Williams v NY City Hous. Auth.*, 61 AD3d 62, 80-81 [1st Dept 2009] [dismissing NYCHRL claims].)

### E. Dismissal of the Retaliation Claim against Quirk

#### 1. May 2016 Call to Dalton

The Plaintiff alleges that, in May 2016, Quirk 'tampered' with a witness. Not so. As aforesaid, Quirk merely called the Plaintiff's friend Dalton to advise her that he was giving the OCA a letter that she had written.[27] Until April 2017, Quirk had never even seen the Plaintiff's April 2016 OCA claim, which in fact was seriously defective. Every OCA claim form contains the following lines 2 through 5:

> 2. I believe that the act or treatment described below is discriminatory:
> 3. I believe that the following individual(s) has (have) acted in a discriminatory manner:
> 4. Date of act or treatment (or indicate if ongoing):
> 5. Witnesses (include names, work locations and telephone numbers):

---

27    According to the Complaint (¶ 106), in May 2016, Quirk called Dalton, asking her questions designed to divulge how she would respond to an OCA interview, and telling her to call him if she spoke with the OCA. According to the Complaint (¶ 107), Quirk also told Dalton that Quirk possessed information that would 'bury' the Plaintiff. (Quirk Decl. ¶ 34.) In truth, the OCA had asked Quirk to provide any documents the Union had regarding the Plaintiff. He called Dalton merely to tell her that he was required to give the OCA the 2014 letter she had written supporting the Plaintiff. The Union does this anytime it discloses a member's confidence. (*Id.* ¶ 35.) It is true that Quirk also told Dalton not to speak about their conversation to third parties, but this was solely to protect confidentiality. Furthermore, to the extent that the conversation expanded beyond Quirk's mission, it was only because the Plaintiff's savvy confidante gaily took it that way – herself bringing up possible questions, feeling out Quirk's thoughts, saying she would be in touch, and so forth. (*Id.* ¶ 36.)

For lines 2 through 4, the Plaintiff merely answered, "Please see attached." She left line 5 blank.[28] The attachment attacks a vast number of individuals within the OCA or the Union, as well as the entities themselves, but is entirely silent as to who is actually a 'respondent', and *never once mentions Dalton.* The Plaintiff had an opportunity to specify Quirk at line 3, and Dalton at line 5; assisted by counsel, she did not. The Plaintiff "should not be permitted to play fast and loose with the courts by advocating contrary positions". (*Perkins v Perkins*, 226 AD2d 610, 610 [2nd Dept 1996].) She did not advise that she deemed Quirk a respondent, and she neither named Dalton nor gave the OCA her phone number. The Plaintiff may not complain that the OCA thereupon asked Quirk to give it her file, according to his normal procedures.

### 2. February 2017 Sharing of Judge Fisher's Letter

The Plaintiff also faults Quirk because, in February 2017, he shared a letter that the Honorable Judge Fern A. Fisher had sent on January 24, 2017, to Quirk at his home address.

> The claim brought against you by New York State Court Officer Lieutenant Angela Shirlaw, contending that you referred to female judges using offensive language, has been reviewed and investigated by the Unified Court System's Office of the Managing Inspector General for Bias Matters. I have reviewed the report of the Managing Inspector General for Bias Matters and, based upon the evidence disclosed in the report, I concur in the determination that the allegation was unsubstantiated.

(Exh. T.)

Quirk had no retaliatory animus in sharing the letter with the Delegates: he was merely countering the Plaintiff's rumor-mongering;[29] he had never seen or received, and so could not

---

28 For an example of the form properly filled out, see exhibit C hereto, the claim form in *Duch v Kohn*, 2013 US Dist LEXIS 51242 (SDNY Mar. 28, 2013).

29 By February 1, 2017, the Plaintiff had long been boasting to fellow court officers and anyone else who would listen, or could not avoid her. From or after April 2016, she would pride herself on the OCA claim. In or after December 2016, the EEOC charge

distribute, either the OCA claim or the EEOC charge;[30] referring to female judges as c---s is not *per se* a violation of the human-rights laws, and the libel concerned Quirk's conduct within the scope his presidency;[31] and Quirk did not say that the Plaintiff claimed entitlement.[32] Similarly, he had no retaliatory animus in sharing the letter with the Plaintiff.[33]

---

joined the OCA claim. She would swagger about her intent to 'take down' both the OCA and the Union. She had even enlisted surrogates to fan the fires of her publicity campaign. (Quirk Decl. ¶ 39.)

30   At that time, neither Quirk nor the Union had ever received a copy of either the Plaintiff's OCA claim or her EEOC charge. The Union would not receive a copy of the EEOC charge until after the EEOC sent the Union a notice (exh. Y) on March 7, 2017. The Union would not receive a copy of the OCA claim until after the OCA filed its EEOC position statement (exh. DD) on April 7, 2017, and included the claim as an attachment. (Quirk Decl. ¶ 40.)

According to the Complaint (¶ 113), on February 1, 2017, at Quirk's request, court officer Irene Mattor, the Plaintiff's delegate, gave the Plaintiff a copy of Judge Fisher's letter, and explained that a copy of her OCA claim had been mailed to the delegates. As aforesaid, neither Quirk nor the Union had ever received a copy of the OCA claim, and so could not possibly have mailed-out a copy. The Union had never received anything other than the letter. Quirk certainly did not ask Mattor to convey a message that a copy had been mailed to the delegates. (Quirk Decl. ¶ 41.)

31   As for giving Judge Fisher's letter to the delegates, Quirk's only agenda was of clearing his name, not retaliation. Quirk had been the victim of a vicious libel – about Quirk's language with regard to the judiciary – with no apparent connection to any of the human-rights laws. In the wake of the Plaintiff's nasty campaign of boasting and rumor-mongering, Quirk could now announce the simple truth. (Quirk Decl. ¶ 42.)

As president, Quirk always gives the delegates updates on such matters as legislation, directives from the OCA, and cases as to which the Union is a party. It is true that, so far as Quirk knew, the Union was *not* a respondent in the OCA claim. Indeed, as would turn out several months later when the OCA first gave out a copy of the claim (exh. Q), *no one* was named as a respondent therein. (Quirk Decl. ¶ 43.)

In any event, Quirk was simply not aware of the contents of the OCA claim on February 1. As aforesaid, Quirk always gives the delegates updates on cases as to which the Union is a party. Now, it seemed appropriate to give them an update on a libel that apparently concerned Quirk's conduct within the scope of being the Union's president. Surely, it would have been a dereliction of duty for him not to provide Judge Fisher's letter and invite a discussion. (Quirk Decl. ¶ 45.)

Quirk publicized Judge Fisher's letter merely because it constituted a personal vindication against vicious *ad hominem* libels that the Plaintiff had been circulating – in public as well as by attachment to an OCA claim form that did not name him. "Personal animus ... is insufficient to establish a claim under ... the NYCHRL." *Lennert-Gonzalez v Delta Airlines, Inc.*, 2013 US Dist LEXIS 27832, at *24 (SDNY 2013) (jealousy of the plaintiff's beauty).

As to whether Quirk distributed the OCA charge or subsequent EEOC claim, too, those further claims, vigorously denied by Quirk, are simply not plausible. "It is simply not plausible that [Quirk] would [give to the delegates an OCA charge or EEOC claim] that [the plaintiff, the OCA and the EEOC] did not provide." (*Barberan v Nationpoint*, 706 F Supp 2d 408, 424 [SDNY 2010].) "It is not plausible that [Quirk] could forward information to the [delegates] regarding [a charge] about which he was unaware." (*Woods v Lancaster Ind. Sch. Dist.*, 834 F Supp 2d 512, 517 [ND Tex 2011].) "It is simply not plausible that [Quirk] should have known [the contents of the plaintiff's OCA claim and EEOC charge] before [he received a copy]." (*Trustees of Michigan Regional Council of Carpenters' Emple. Benefits Fund v H.B. Stubbs Co.*, 91 F Supp 3d 879, 891 [ED Mich 2014].) The plaintiff's allegations "are not plausible in light of

---

32    In the Complaint (¶ 112), the Plaintiff accuses Quirk of suggesting to the delegates that she claimed to be entitled to the Major position because she is a lesbian. To this day, one may fairly surmise that the Plaintiff is hoping to leverage her protected status into an easy settlement paving the way to preferential treatment. However, Quirk certainly did not say so. (Quirk Decl. ¶ 47.)

33    As for giving Judge Fisher's letter to the Plaintiff, again Quirk had no sinister motive. The letter gave no indication that a copy had been given to her. To this day, it appears that none ever was, except for the one that Quirk caused to be delivered. *Quirk had no reason to think that the OCA would issue a number of decisions, one for each of the two possible respondents that it could guess-at in the nightmare of allegations – as the OCA did, according to the Plaintiff, sending her a differently-worded letter.* Quirk fairly and correctly, assumed that the Plaintiff was in the dark as to Judge Fisher's decision, and realized that it was wrong that the Plaintiff should not have a copy. (Quirk Decl. ¶ 46.)

the more likely and eminently more plausible view of the facts". (*High Falls Brewing Co., LLC v Boston Beer Corp.*, 852 F Supp 3d 306, 322 [WDNY 2012].)

### 3. April 2017 Handling of the Rash-on-the-Balls Text Message

As aforesaid, in March 2017, Major Allen received a text message: "I hope all the heads of criminal court get a rash on [t]heir balls for approving Angela coming here!" (Exh. AA; Allen Aff. ¶ 15.) In April, the Union convened a meeting of the Plaintiff's subordinates to remind them to take such feelings 'up' with the Union – not 'out' on the Plaintiff.[34] That is, Quirk had vice-president Kantor meet with the subordinates merely (a) to nip hostility in the bud and (b) to have them remember that staffing decisions are the exclusive province of the Employer.

### 4. Not "reasonably likely to deter a person from engaging in protected activity"

As aforesaid, each of the events alleged to be retaliatory was absolutely devoid of retaliatory animus. Moreover, none was "reasonably likely to deter a person from engaging in protected activity".[35] That is, May 2016 call to Dalton, the February 2017 sharing and the April 2017 meeting are *at worst* petty slights no more actionable than (1) altering a plaintiff's job responsibilities; (2) assigning coworker to monitor a plaintiff; (3) ceasing to interact with a plaintiff other than to provide instruction or discipline; (4) commenting in staff meeting that a

---

34    On April 4, 2017, the Union convened a meeting of the officers in the Summons Part at the One Centre Street command. The need arose from concerns that had been voiced about the Plaintiff, who was the incoming supervisor. These concerns had been acknowledged by the outgoing supervisor, Lieutenant Gerard Giles, and were also apparent in the text message (exh. AA) that had been received by Major Allen. The mission was simply to remind every attendant to take any supervisor issue 'up' with the Union, and not 'out' on her. (Quirk Decl. ¶¶ 51-52; Kantor Aff; Giles Aff. ¶ 3.)

35    Cf. the Plaintiff's cases of *Mandell v County of Suffolk*, 316 F3d 368 (2d Cir 2003) (forced resignation in retaliation for public criticism of employer); and *Stajic v City of NY*, 214 F Supp 3d 230 (SDNY 2016) (ouster from laboratory in retaliation for public remarks about hiring of supervisor).

plaintiff is not wanted on staff; (5) designating contact person for media inquiries; (6) directing a plaintiff to stop interrupting daily briefing; (7) embarrassing and yelling at a plaintiff; (8) excluding a plaintiff from meetings; (9) excluding a plaintiff from two meetings; (10) extensively questioning a plaintiff's reports; (11) forbidding a plaintiff from training new associates; (12) giving a plaintiff constructive criticisms; (13) increasing criticism and documentation; (14) increasing scrutiny of a plaintiff; (15) micro-managing a plaintiff; (16) not inviting a plaintiff on trip; (17) not inviting a plaintiff to lunch; (18) reassigning teacher from 12th grade to 7th grade; (19) relocated a plaintiff's office from fifth floor to first; (20) removing temporary assistant helping a plaintiff; (21) requesting written account of a plaintiff's whereabouts when she leaves for more than ten minutes; (22) requiring a plaintiff to undergo written counseling; (23) singling a plaintiff out for working with her door ajar but not open; (24) telling other employees not to speak with a plaintiff; (25) telling a plaintiff she is hypocrite pretending to be godly; (26) telling a plaintiff that she needs position with 'better fit for you'; (27) telling a plaintiff to improve her 'negative behaviors'; (28) telling a plaintiff that disrespect is unacceptable; and (29) yelling at a plaintiff.[36]

---

36    (1) *Mitchell v Suny Upstate Med. Univ.*, 2017 US Dist LEXIS 38349 (NDNY Mar. 17, 2017); (2) *Zelaya v UNICCO Serv. Co.*, 733 F Supp 3d 121 (DDC 2010); (3) *Luckey v Visalia Unified Sch. Dist.*, 2015 US Dist LEXIS 166504 (ED Cal Dec. 10, 2015), *aff'd*, 671 F App'x 1005 (9th Cir 2016); (4) *Johnson v Edwards*, 2012 US Dist LEXIS 14289 (SD Miss Feb. 7, 2012), *aff'd*, 509 F App'x 362 (5th Cir 2013); (5) *Place v City of Eugene*, 2008 US Dist LEXIS 11398 (D Or Feb. 13, 2008), *aff'd*, 332 F App'x 402 (9th Cir 2009); (6) *Moore v Shands Jacksonville Med. Ctr.*, 2013 US Dist LEXIS 190745 (MD Fla Oct. 18, 2013); (7) *Hahn v Bank of Am. Inc.*, 2014 US Dist LEXIS 45886 (SDNY Mar. 31, 2014), *aff'd*, 607 F App'x 55 (2d Cir 2015); (8) *Jones v Kent Sales & Serv. Corp.*, 2012 US Dist LEXIS 132112 (ND Ala Sep. 17, 2012); (9) *Scholl v Educ. Mgt. Corp.*, 2012 US Dist LEXIS 127293 (ND Ind Sep. 7, 2012); (10) *Goins v County of Merced*, 185 F Supp 3d 1224 ED Cal 2016; (11) *Muniz v El Paso Marriott*, 773 F Supp 2d 674 (WD Tex 2011); (12) *Johnson v Watkins*, 803 F Supp 2d 561 (SD Miss 2011), *aff'd*, 472 F App'x 330 (5th Cir 2012); (13) *Soublet v Louisiana Tax Commn.*, 766 F Supp 2d 723 (ED La 2011); (14) *EEOC v Omni Hotels Mgt. Corp.*, 516 F Supp 2d 678

On the other hand, the events in the Plaintiff's cases are indeed reasonably likely to deter protected activity: (1) corrections officer's slamming inmate into wall; (2) defendant's sending letter misrepresenting class-action issues in order to discourage absentees from joining, with intent to subvert court's approved notice; (3) defense counsel's conducting himself in bad faith and in violation of court rules and order and ethical norms; (4) employer's demoting plaintiff; (5) employer's prosecuting disciplinary proceedings; (6) employer's reassigning plaintiff to standard track-laborer tasks; (7) employer's reducing plaintiff's bonus, diminishing her work responsibilities, and fostering hostile work environment; (8) employer's removing plaintiff from her command; (9) employer's replacing plaintiff's prior responsibilities with menial tasks; (10) employer's requiring polygraph test; (11) employer's sending letter to all employees stating that employees could refuse to speak with EEOC or request presence of employer's counsel; (12) employer's telling government that workers were part of terrorist group, despite having no evidence; (13) employer's forcing resignation; (14) employer's opening criminal cases on plaintiffs, ordering them to submit to interviews and putting notations in their personnel records;

(ND Tex 2007); (15) *Obondi v UT Southwestern Med. Ctr.*, 2017 US Dist LEXIS 98324 (ND Tex June 23, 2017); (16) *Stephens v Gutierrez*, 2010 US Dist LEXIS 24074 (ED Va Mar. 15, 2010); (17) *Rhoads v Rieth-Riley Constr. Co.*, 2013 US Dist LEXIS 42223 (ND Ind Mar. 26, 2013; (18) *Lucero v Nettle Cr. Sch. Corp.*, 566 F3d 720 (7th Cir 2009); (19) *Cunningham v NY State Dept. of Labor*, 2010 US Dist LEXIS 42943 (NDNY Apr. 30, 2010), *aff'd*, 429 F App'x 17 (2d Cir 2011); (20) *Edwards v Tacoma Pub. Schs.*, 2006 US Dist LEXIS 76631 (WD Wash Oct. 20, 2006), *aff'd*, 275 F App'x 629 (9th Cir 2008); (21) *McPherson v City of NY*, 2011 US Dist LEXIS 108804 (SDNY Sep. 23, 2011); (22) *Greene v Alabama Dep't of Pub. Health*, 2017 US Dist LEXIS 16357 (MD Ala Feb. 3, 2017), *adopted*, 2017 US Dist LEXIS 25275 (MD Ala Feb. 23, 2017); (23) *Blackledge v Alabama Dep't of Mental Health & Mental Retardation*, 2007 US Dist LEXIS 79476 (MD Ala Oct. 25, 2007); (24) *McWhite v NY City Hous. Auth.*, 2008 US Dist LEXIS 29145 (EDNY Apr. 10, 2008); (25) *Bermudez v City of NY*, 783 F Supp 2d 560 (SDNY 2011); (26) *Craig v Lew*, 109 F Supp 3d 268 (DDC 2015); (27) *Taylor v Chao*, 516 F Supp 2d 128 (DDC 2007), *aff'd*, 571 F3d 1313 (2009); (28) *Patterson v Xerox Corp.*, 2012 US Dist LEXIS 82052 (WDNY June 13, 2012); and (29) *Alderson v Ferrellgas, Inc.*, 127 F Supp 3d 937 (ND Ind 2015).

(15) employer's ousting plaintiff from laboratory; (16) prior to unfair labor practices hearing, employer's demanded copies of all potential witnesses' statements collected during investigation by NLRB; (17) school's barring plaintiff from participating in work-study program; (18) supervisor's sending armed state police to search plaintiff's property with dogs; and (19) a few weeks after plaintiffs' EEOC charges filed against union, union's distributing memo to all members saying that defense might result in higher dues – after which members refused to swap shifts with plaintiffs and provide opportunities for overtime, cried 'asshole', threatened to beat plaintiffs up, and shunned them.[37]

### 5. Temporal Proximity is Lacking

As aforesaid, none of the events involved retaliatory animus and none was reasonably likely to deter a person from engaging in protected activity. Moreover, those in February and April of 2017 have *temporal proximity* neither to the May 2016 OCA claim nor to the December 2016 EEOC charge.[38] Temporal proximity must be "very close". (*Clark County Sch. Dist. v*

---

37     (1) *Espinal v Goord*, 558 F3d 119 (2d Cir 2009); (2) *Belt v EmCare Inc.*, 299 F Supp 2d 664 (ED Tex 2003); (3) *Haffer v Temple Univ. of Commonwealth Sys. of Higher Educ.*, 115 FRD 506 (ED Pa 1987); (4) *Gordon v City of NY*, 2015 US Dist LEXIS 70915 (SDNY June 2, 2015); (5) *Alvarez v City of NY*, 31 F Supp 2d 334 (SDNY 1998); (6) *Burlington N. & Santa Fe Ry. v White*, 548 US 53 (2006); (7) *Johnson v J. Walter Thompson U.S.A., LLC, supra*; (8) *Albunio v City of NY*, 16 NY3d 472 (2011); (9) *Kessler v Westchester County Dept. of Social Servs.*, 461 F3d 199 (2d Cir 2006); (10) *Arcamuzi v Continental Air Lines, Inc.*, 819 F2d 935 (9th Cir 1987); (11) *EEOC v Day & Zimmerman NPS, Inc.*, 2016 US Dist LEXIS 48800 (D Conn Apr. 12, 2016); (12) *Centeno-Bernuy v Perry*, 302 F Supp 2d 128 (WDNY 2003); (13) *Mandell v County of Suffolk, supra*; (14) *Mullins v City of NY*, 626 F3d 47 (2d Cir 2010); (15) *Stajic v City of NY, supra*; (16) *NLRB v Robbins Tire & Rubber Co.*, 437 US 214 (1978); (17) *Cid v ASA Inst. of Bus. & Computer Tech., Inc.*, 2013 US Dist LEXIS 41001 (EDNY Mar. 22, 2013); (18) *Kellman v Metro. Transp. Auth.*, 8 F Supp 3d 351 (SDNY 2014); (19) *Booth v Pasco County*, 829 F Supp 2d 1180 (MD Fla 2011) (temporal proximity).

38     That a plaintiff's protected activity caused a defendant's subsequent act, alleged to be retaliatory, can be proven either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial

*Breeden,* 532 US 268, 273 [2001].) "[C]ourts in this Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action precludes an inference of retaliation." (*Petrisch v JP Morgan Chase,* 789 F Supp 2d 437, 450 [SDNY 2011]. Accord, *Beachum v AWISCO NY & Local 810,* 785 F Supp 2d 84 [SDNY 2011], *aff'd,* 459 F App'x 58 [2d Cir 2012]; *Workneh v Super Shuttle Intl., Inc.,* 2016 US Dist LEXIS 136906 [SDNY Sep. 30, 2016].)[39]

---

evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." (*Gordon v NY City Bd. of Educ.,* 232 F3d 111, 117 [2d Cir 2000].)

39    In the Plaintiff's cases invoking *temporal proximity,* it was invariably less than the gap herein: *Booth v Pasco County, supra* (a few weeks); *Krebaum v Capital One, N.A.,* 138 AD3d 528 (1st Dept 2016) (employment terminated within month); *Kwan v Andalex Group, LLC,* 737 F3d 834 (2d Cir 2013) (fired within three weeks); and *Perrin v Connecticut Dept. of Corr.,* 2016 US Dist LEXIS 154399 (D Conn Nov. 7, 2016) (adverse actions within three months).

### F. Supplemental Jurisdiction

If, as is expected, the Plaintiff's federal claims (against the OCA) are dismissed, it becomes necessary to decide whether to continue exercising supplemental jurisdiction over her NYCHRL claims, in order to dismiss them, too. See 28 U.S.C. § 1367. "[T]he values of judicial economy, convenience, fairness, and comity" inform this decision. (*Carnegie-Mellon Univ. v Cohill*, 484 US 343, 350 [1988].) There is ample precedent for exercising supplemental jurisdiction in order to dismiss an NYCHRL claim.[40]

In *Moccio v Cornell Univ.*, 889 F Supp 2d 539 (SDNY 2012) (Engelmayer, J.), *aff'd*, 526 F App'x 124 (2d Cir 2013), this Court had dismissed all the non-NYCHRL claims. The Court went on to dismiss the NYCHRL claims, too, holding that "no reasonable juror could find that defendants retaliated against [the plaintiff] in violation of the NYCHRL." *Id.* at 592. Like so many other courts, even though this Court did not explicitly say so, it was dismissing the NYCHRL claims by continuing to exercise its supplemental jurisdiction.

---

40   "Although plaintiff has no federal claim that survives summary judgment, her claims under the NYCHRL arise from the same facts and rely on the same evidence as her federal claims, and ... the Court's exercise of supplemental jurisdiction over plaintiff's pendent claims is warranted." (*Fleming v MaxMara United States, Inc.*, 644 F Supp 2d 247, 267 [EDNY 2009] [citations omitted] [dismissing complaint], *aff'd*, 371 F App'x 115 [2d Cir 2010].) "[T]he *Cohill* factors lead the Court to exercise supplemental jurisdiction over Plaintiff's claims arising under the NYCHRL." (*Kaur v NY City Health & Hosps. Corp.*, *supra* [dismissing complaint].) "Based on the balance of the *Cohill* factors, this court will exercise supplemental jurisdiction over plaintiff's claims arising under the NYHRL and the NYCHRL." (*Deshpande v Medisys Health Network, Inc.*, 2010 US Dist LEXIS 37891, at *71 [EDNY Apr. 16, 2010] [dismissing complaint], *aff'd*, 423 F App'x 31 [2d Cir 2011].) "[T]here is no compelling reason to avoid reconsideration and a final determination of the NYCHRL claims." (*Vargas v Morgan Stanley*, 2011 US Dist LEXIS 108952, at *2, n 1 [SDNY Sep. 23, 2011] [dismissing complaint].) "[T]he Court need not invest any additional judicial resources to resolve Plaintiff's NYCHRL claims, and considerations of convenience, fairness, and comity do not counsel against exercising supplemental jurisdiction over these claims. Plaintiff's NYCHRL claims are therefore DISMISSED." (*Smith v Johnson*, 2014 US Dist LEXIS 151193, at *12-13 [SDNY Oct. 24, 2014], *aff'd*, 636 F App'x 34 [2d Cir 2016].)

## G.   Dismissal With Prejudice

"Because plaintiffs have now taken, unsuccessfully, three bites of the apple, the Court will ... deny the application for a preliminary injunction and dismiss the instant complaint with prejudice." (*Foster v Morgenthau*, 633 F Supp 718 [SDNY 1986].)   "[B]ecause the flaws in pleading are incurable on the facts of this case, dismissal is with prejudice." (*Fort Worth Employers' Retirement Fund v Biovail Corp.*, 615 F Supp 2d 218, 233 [SDNY 2009].)   (See also *Copeland v Fortis*, 685 F Supp 2d 498, 507 [SDNY 2010]; *Grimes v Fremont Gen. Corp.*, 933 F Supp 2d 584, 597 [SDNY 2013]; and *Johnson v Andy Frain Servs.*, 2015 US Dist LEXIS 29932, at \*12 [EDNY Mar. 10, 2015] [NYCHRL claims], *aff'd*, 638 F App'x 68 [2d Cir 2016].)

## H.   The Plaintiff's Motion for a Preliminary Injunction

As aforesaid, an injunction against Quirk will affect the Union.   Thereby, the injunction affects the OCA – a branch of the government which acts pursuant to statute and regulatory scheme.   "When, as here, the preliminary injunction will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, it should be granted only if the moving party meets the more rigorous likelihood-of-success standard." (*Red Earth LLC v United States*, 657 F3d 138, 143 [2d Cir 2011] [internal quotation marks omitted].)   Just as the Complaint should be dismissed, *a fortiori* the action is not likely to succeed on the merits.

Even if *arguendo* an injunction would not affect such government action, the Plaintiff must still show "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief". (*Christian Louboutin S.A. v Yves St. Laurent Am. Holding, Inc.*, 696 F3d 206, 215 [2d Cir 2012].)   Just as the Complaint should be dismissed, *a fortiori* the plaintiff cannot show such questions.

28

Moreover, in the event of an injunction, the Union will be irreparably harmed, and the balance of hardships will tip toward the Union, because the Union simply will not know how to conduct its business. Indeed, the public interest weighs against granting an injunction.

## CONCLUSION

For the foregoing reasons, the Court should grant Quirk's motion to dismiss, with prejudice, and deny the Plaintiff's motion for a preliminary injunction.

Dated: Brooklyn, New York Respectfully submitted,
   August 2, 2017

     /s/ Bruce Baron
     Bruce Baron, Esq. (BB-7297)
     BARON ASSOCIATES P.C.
     *Attorneys for Defendant Dennis Quirk*
     2509 Avenue U
     Brooklyn, New York 11229
     (718) 954-6501